UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:24-CV-49-FL

KENNY R. HOLLEY,

    Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

    Defendant.

MEMORANDUM AND
RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions, [DE-27, -30], and Claimant Kenny R. Holley's motion to strike, [DE-28], motion to reassert prior motions for discovery and a hearing, [DE-29], and motion to stay, [DE-31]. Briefing is complete, and the matters are ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the final decision of the Commissioner be affirmed, and Claimant's motions be denied.

## I. STATEMENT OF THE CASE

Plaintiff Kenny Holley originally brought this action against the Commissioner of Social Security; Angel Quiros, Commissioner of the Connecticut Department of Corrections; and Andrea Barton Reeves, Commissioner of the Connecticut Department of Social Services. Compl. [DE-1] at 2. He alleged that Defendants violated his constitutional rights, the Civil Rights Act of 1964, and a litany of other federal regulations, statutes, and procedural rules by discriminating and conspiring against him. *Id.* at 3–4. Plaintiff sought over $100 million in damages. The court ultimately dismissed the claims against Quiros and Reeves, allowed Claimant to file an amended

claim limited to "review of a Social Security determination related to the Appeals Council decision dated July 30, 2024" with the Commissioner of Social Security as the sole defendant, ordered Claimant not to assert claims that are "unrelated to such Social Security decision," and denied Claimant's motions for entry of default, for fact finding hearing, and for writ of mandamus, [DE-10, -11, -12, -13]. [DE-14].

On February 18, 2025, Claimant filed an amended complaint naming numerous defendants, in addition to the Commissioner, and alleging a variety of claims unrelated to the Appeals Council decision dated July 30, 2024, in contravention of the court's prior order. [DE-16]. The court reviewed the amended complaint, dismissed all claims other than a claim against the Commissioner for review of the prior Social Security determination related to the Appeals Council decision dated July 30, 2024, and directed continued management of the case in accordance with Supplemental Rules for Social Security Actions under 42 U.S.C. 405(g). [DE-18].

On May 5, 2025, the Commissioner filed a transcript as an answer, as permitted under Supplemental Rule 4, [DE-19], and the Clerk noticed the briefing schedule under which Claimant's brief was due on June 7, 2025, [DE-20]. On May 23, 2025, Claimant filed a motion for a fact finding hearing, [DE-22], motion for discovery, [DE-23], and motion to object to the defendant filing an improper answer to the complaint, for not servicing a copy to the plaintiff, and the scheduling of a brief hearing by the clerk of court [DE-24], and on July 7, 2025, Claimant filed another motion to compel discovery, [DE-25]. Because this action is governed by the Supplemental Rules and must be decided on the administrative record, the court denied Claimant's motions seeking hearings and discovery and allowed Claimant an additional opportunity to file a brief in accordance with the Supplemental Rules. [DE-26].

On August 27, 2025, Claimant timely filed a brief, [DE-27], and subsequently filed a

2

motion to strike the transcript filed by the Commissioner, [DE-28], and a motion to reassert his previously denied motions for discovery and a hearing, [DE-29]. The Commissioner filed a response brief, [DE-30], and no reply was filed with the time to do so having expired. On November 11, 2025, Claimant filed a motion to stay this proceeding. [DE-31].

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

3

## III. DISCUSSION

### A. Claimant's Motions

Claimant first asks the court to strike the Commissioner's answer, asserting it is, among other things, incomplete, insufficient, immaterial, redundant, scandalous, and evasive. [DE-28]. As permitted under Supplemental Rule 4, the Commissioner filed a transcript as an answer, which constitutes the administrative record on which the court's decision in this case must be based. [DE-26]; 42 U.S.C. § 405(g). Claimant's grounds for striking the administrative record are conclusory and unsupported by citation to any specific part of the record. Accordingly, the motion to strike should be denied.

Claimant next seeks to reassert his previously denied motions for discovery and a hearing in support of his objection to the Commissioner's answer and motion to strike it, noting that he had subsequently complied with the court's prior order by filing his brief. [DE-29]. The court's reasoning for denying Claimant's prior motions for discovery and a hearing were not changed by the filing of Claimant's brief. Discovery and a fact-finding hearing are not appropriate because, as the court explained, "this action is governed by the Supplemental Rules and must be decided on the administrative record." [DE-26]; 42 U.S.C. § 405(g). Accordingly, Claimant's motion to reassert his previously denied motions for discovery and a hearing should be denied.

Finally, Claimant asks the court to stay this matter due to his arrest on October 11, 2025. [DE-31]. As of January 14, 2026, Claimant was still detained in the New Haven Correctional Center in New Haven, Connecticut, on charges of 4th Degree Sexual Assault and Indecent Sexual Contact with a Minor Victim.[1] Claimant asserts that fairness dictates this case be stayed pending

---

[1] *See* State of Conn. Judicial Branch, Pending Case Detail for Kenny Holley, https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=8db2206c-b01a-4fa6-9bb2-28444e23788c (last viewed Jan. 14, 2026).

4

conclusion of his criminal case, but the matters in the current case are fully briefed and ripe for decision, so it is not apparent how Claimant is prejudiced by the case proceeding. Furthermore, Claimant faces serious charges, two of which are felonies, and it is not apparent when the criminal case might be resolved. The indefinite length of any stay weighs against granting such relief. Finally, while it may be more challenging to pursue litigation while in custody, it is not impossible, as evidenced by this court's heavy docket of cases litigated by incarcerated individuals. Should specific circumstances arise related to his custody that necessitate relief, he can file a motion. Accordingly, Claimant's motion to stay should be denied.

## B. The SSI Benefit Calculation

Claimant was granted SSI benefits as of March 14, 2019, and received a monthly payment of $771 beginning in April 2019. (R. 27, 97–99). On May 3, 2019, Claimant was notified that because he receives in-kind support and maintenance ("ISM") from another party, i.e., food and shelter due to living with his parents, his SSI benefits would be calculated in accordance with the requirements of the ISM provision beginning in June 2019, and his monthly payment would be reduced by $213.33 to $557.67. (R. 27, 100–11). On May 10, 2019, SSA issued a second notice stating Claimant's benefit would be reduced beginning in June 2019, to $514 monthly based on income he received in the form of food or shelter valued at $277 (less a $20 exemption). (R. 118–23). By letter dated May 9, 2019, Claimant appealed the reduction in benefits based on prejudicial rulings, fraud, discrimination, and conspiracy to cause financial and medical hardship. (R. 27, 112). After receiving documentation from Claimant regarding his contribution to household expenses, a partially favorable decision was issued finding Claimant received only $132.21 in ISM. (R. 125–27).

Claimant requested a hearing by an Administrative Law Judge ("ALJ"), again asserting

fraud, discrimination, conspiracy, and prejudicial rulings by SSA. (R. 27, 133). On July 18, 2023, the ALJ held a hearing regarding the reduction in Claimant's monthly SSI payment between April and August 2019, while he was living with his parents in North Carolina.[2] (R. 34–52). On August 9, 2023, the ALJ issued an unfavorable decision upholding the $132.21 reduction of Claimant's monthly SSI benefits from April 1 to July 31, 2019. (R. 24–33). Claimant requested review of the ALJ's decision, (R. 16–23), which the Appeals Council denied, (R. 1–8). Claimant then filed a complaint in this court seeking review of the final administrative decision.

Claimant in his brief asserts a variety of generalized complaints, including fraud, discrimination, conspiracy, and prejudicial rulings by SSA over the course of 25 years. [DE-27] at 4–9. However, the scope of review here is limited to whether the Commissioner's final determination regarding Claimant's receipt of ISM from April 1 to July 31, 2019, was made in accordance with the applicable legal framework and supported by substantial evidence. *See Coffman*, 829 F.2d at 517. Because the ALJ's determination was reached through a correct application of the law and is supported by substantial evidence, the court should affirm the Commissioner's final decision.

Two of the eligibility requirements for SSI benefits are limited income and limited resources. 20 C.F.R. § 416.202(c), (d). The regulations define income as "anything you receive in cash or in kind that you can use to meet your needs for food or shelter," and "[i]n-kind income is not cash, but is actually food or shelter, or something you can use to get one of these." *Id.* § 416.1102. "In-kind support and maintenance means any food or shelter that is given to you or that you receive because someone else pays for it. Shelter includes room, rent, mortgage payments,

---

[2] A prior hearing was held on November 1, 2022, with the same ALJ but related to a different case not involving the payment reduction at issue here. (R. 39, 53–87).

6

real property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection services." *Id.* § 416.1130(b). The value of ISM is calculated using one of two rules: the "one-third reduction rule," or the "presumed value rule." *Id.* § 416.1130(c). The one-third reduction rule "applies if you are living in the household of a person who provides you with both food and shelter," and the presumed value rule applies in all other situations. *Id.* Under the one-third reduction rule, "support and maintenance received in kind is valued at one-third of the federal benefit rate, notwithstanding its current market value, and is treated as additional income for purposes of determining SSI eligibility." *Ragsdale v. Apfel*, 999 F. Supp. 814, 817 (E.D. Va. 1998) (citing 20 C.F.R. § 416.1131(a)). The alternative presumed value is one-third of the federal benefit rate plus a "general income exclusion" of $20 per month. *Id.* (citing 20 C.F.R. §§ 416.1140, 416.1124(c)(12)). Importantly, under the presumed value rule, the individual can rebut the presumed value by demonstrating that the actual value of support received is lower. *Id.* (citing 20 C.F.R. § 416.1140(a)(2)). The amount of SSI benefits an individual receives is calculated by reducing the benefit rate by any countable income, including ISM. *Id.* § 416.420; *see generally Flaubert M. o.b.o. F.W.M. v. Kijakazi*, No. CV 21-3141-BAH, 2022 WL 17540366, at *2 (D. Md. Dec. 8, 2022) (outlining the regulatory framework for calculating SSI benefits involving ISM).

In this case, the ALJ determined that Claimant became eligible for SSI benefits on March 14, 2019; during the period of eligibility, Claimant received ISM while living with his parents from April until August 1, 2019, with no qualifying exception; Claimant did not pay a pro rata share of household operating expenses; and Claimant's SSI benefit was subject to reduction for ISM from April 1 to July 31, 2019. (R. 29–31).

At the administrative hearing, Claimant testified that he lived with his parents in North

7

Carolina from April 2019 to August 1, 2019, when he relocated to Connecticut.[3] (R. 43–44, 46). There was no written "renter's agreement," but Claimant recalled he orally agreed to pay $200–$300 monthly for rent and utilities. (R. 44). Because Claimant received food stamps, he provided his own food and did not receive food from his parents. (R. 45–46).

When asked why Claimant believed his reduction in SSI benefits during the period he lived in North Carolina was incorrect, he responded that he was given notice that his benefits would be reduced if he did not provide documentation regarding his contributions to household expenses, but SSA reduced his benefits prior to the date he was given to provide the documentation. (R. 49–50). When the ALJ asked if Claimant thought he was paying other expenses beyond what SSA claims he paid to live at his parents' home in North Carolina, the Claimant responded, "No," and explained that he thought SSA "just jumped the gun" and should have waited to receive his information before reducing his benefits. (R. 50–51). Thus, Claimant did not dispute the ALJ's findings that he resided with his parents between April 2019 and August 1, 2019, that he received ISM during that time, or even the amount of the ISM calculated by SSA.

The ALJ reviewed the field office's calculation of ISM and Claimant's hearing testimony and determined the underlying determination to be correct. (R. 29–30). The ALJ identified the initial notice of May 3, 2019, and the May 10, 2019 notice finding an adjusted reduction from $771 (the federal benefit rate) to $514 monthly based on $277 of ISM, (R. 29, 118–23), or one-third of the federal benefit rate plus the $20 general income exclusion, 20 C.F.R. § 416.1140(a). The ALJ next considered the evidence submitted by Claimant and his parents on reconsideration, including

---

[3] Claimant testified that after returning to Connecticut he was arrested on August 12, 2019, incarcerated for 2 years and 11 months, and released on July 12, 2022. (R. 46–47). Claimant did not receive SSI benefits during his incarceration and believed that it was unfair. (R. 48). However, that issue was not before the ALJ and is not before the court.

8

a statement of household expenses and contributions broken out as follows: household expenses of $300 for food, $901.15 for rent/mortgage, $188.50 for property insurance, $75 for property taxes, $300 for electricity, $250 for gas, and $32 for water, for a total of $2,046.65; and contributions from Claimant of $250 for rent and $200 for utilities, for a total contribution of $450. (R. 29, 128–29). The statement also indicated that Claimant bought his own food and contributed $50 monthly for fish for the household. (R. 129). Finally, the ALJ considered the field office's reconsideration decision, which found that based on total household expenses as of May 2019 of $1,746.65 (which appears to be the total expenses of $2,046.65 less food expenses because Claimant paid for his own food), and three people residing in the household, Claimant's pro rata share would have been $582.21; Claimant was paying only a $450 contribution to the monthly expenses; and the resulting difference was $132.21 attributable to ISM, (R. 29, 125–27), which was less than the presumed value of $277, 20 C.F.R. § 416.1140. The ALJ considered the underlying decision in light of Claimant's testimony regarding his living situation during the relevant time period and found that his benefit was appropriately reduced by $132.21 for ISM during the period from April 1 to July 31, 2019. (R. 30–31) (citing 20 C.F.R. §§ 416.1130(b), 416.1132, 416.1133). Claimant points to no evidence in the record that the ALJ failed to consider or to any errors of law or fact in the ALJ's decision, and the court has independently found none. Accordingly, because the ALJ's decision is not contrary to law and is supported by substantial evidence, it is recommended that the decision of the Commissioner be affirmed.

## IV. CONCLUSION

For the reasons stated herein, it is recommended that the final decision of the Commissioner be affirmed, and Claimant's motions be denied.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on

9

each of the parties or, if represented, their counsel. Each party shall have until **January 30, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the **16** day of January, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge